**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JULISSA LOPEZ,

    *Plaintiff*,

    *v*.                                                                                        **14 Civ. 3324 (PGG)**

AMERICAN DENTAL ARTS, PLLC,
ELIZABETH POLIN,                                                        **AMENDED COMPLAINT**
VAL POLIN, *and*
NATALIA ZEMLYAKOVA AKA
NATALIE ZEMLYAKOVA,

    *Defendants*.
------------------------------------------------------------X

    Plaintiff Julissa Lopez, by counsel, The Harman Firm, PC, alleges as follows:

## PARTIES AND NATURE OF ACTION

    1.    In this employment discrimination matter, Plaintiff Julissa Lopez ("Plaintiff" or "Ms. Lopez"), a pregnant Hispanic woman of Dominican descent, was hired as a receptionist at a dental office and then discriminated against, on the basis of race, national origin, gender, and pregnancy status, and then illegally terminated. Plaintiff was also forced to work overtime without being paid.

    2.    At all times relevant hereto, Ms. Lopez was and is a resident and citizen of the City, County, and State of New York, who was subjected to discrimination due to her national origin, race, and gender, because she was pregnant, all in violation of the New York City Human Rights Law, as codified at N.Y.C. ADMIN. CODE §§ 8-101–31 ("NYCHRL") and was unlawfully and maliciously terminated from her job.

    3.    Furthermore, Defendants failed to pay Ms. Lopez overtime premium in violation of the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201–19, and the New York

Labor Law ("N.Y. LAB. LAW") §§ 2, 190–96, 215, 650–51, and 663(1).  Ms. Lopez's job did not require independent judgment; she did not supervise other individuals, and worked anywhere from thirty-five to fifty (35–50) hours per week and was not compensated for the time that she worked in excess of forty (40) hours per week.

4. At all times relevant hereto, Ms. Lopez was and is a member of two (2) protected classes under the N.Y.C. ADMIN CODE §§ 8-101–31 (New York City Human Rights Law, hereinafter "NYCHRL"):

    (i)    She was and is a woman, NYCHRL § 8-107(1)(a); and

    (ii)    She was and is part of a racial minority, N.Y.C. ADMIN. CODE § 3-240(a) and the NYCHRL §§ 8-102(24) and 8-107(1)(a).

5. Upon information and belief, at all times relevant hereto, American Dental Arts, PLLC ("American Dental") is an entity organized and existing under the laws of the State of New York, and is registered to do business in the County of Albany, State of New York, with a principal place of business in the City of New York at 420 West 23rd Street, 10011.

6. Defendant American Dental is a dental practice business that specializes in general and cosmetic dentistry.

7. Upon information and belief, at all times relevant hereto, Defendant Natalie Zemlyakova was employed as Office Manager by Defendant American Dental; she was Ms. Lopez's direct supervisor and unlawfully terminated her from her employment with Defendant American Dental.

8. Upon information and belief, at all times relevant hereto, Defendant Val Polin ("Mr. Polin") was Defendant Zemlyakova's supervisor and, from time to time, issued orders to Ms. Lopez.

9.  Upon information and belief, at all times relevant hereto, Defendant Elizabeth Polin ("Ms. Polin") was the owner of Defendant American Dental.

## VENUE

10. Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

## JURISDICTION

11. This Court has jurisdiction as this is "[a]n action to recover . . . liability" for violations of the FLSA.  29 U.S.C. § 216(b).

12. This Court also has "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States" including the FLSA, pursuant to 28 U.S.C. § 1331.

13. This Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367.

14. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02.

## JURY DEMAND

15. Plaintiff respectfully requests a jury trial for each claim herein raised.

## STATEMENT OF FACTS

16. On or about March 3, 2012, Ms. Lopez was interviewed by Defendant Zemlyakova for a part-time position with Defendant American Dental as a receptionist.

17. Later that day, Defendant Zemlyakova called Ms. Lopez to offer her the receptionist position beginning on March 5, 2012, with a starting wage of sixteen dollars ($16) per hour.

18. Ms. Lopez received training for the receptionist position with Defendant American Dental, from March 5, to March 9, 2012. Her job responsibilities included answering phone calls, maintaining a calendar, scheduling patient visits, and performing front-desk and general office tasks.

19. Her schedule was varied, but she usually had to work more than forty (40) hours per workweek and kept contemporaneous records of most of her time at the office.

20. In early June 2012, Ms. Lopez began working full-time at Defendant American Dental. She opened the office every weekday and worked until the last patient was seen, even when the office would close very late. Her shift was nominally over at 5:00 p.m., but the very earliest Plaintiff could leave was between 5:45 and 6:30 p.m. because she was required to stay until each and every client of Defendants' had left regardless of if they would require a receptionist. On Wednesdays and Fridays, Ms. Lopez was required worked from 9:00 or 9:30 a.m. until around 7:00 p.m., but even after she became pregnant, she was not entitled to breaks let alone as they are prescribed by the N.Y. LAB. LAW.

21. Defendants have cameras—with sound—set up all over the office, including in the rooms where their patients receive medical procedures. Neither Defendants' patients nor their employees are meant to have access to this information and upon information and belief, none of the clients is aware that their procedures are being recorded.

**OVERTIME AND MEAL BREAKS**

22. Twice per week, on Wednesdays and Fridays, and whenever the office needed coverage for the shifts of other receptionists, she had to work late. She would arrive after 9:00 a.m. but no later than 9:30 a.m. in order to prepare for opening at 10:00 a.m. and would leave as late as 8:00 p.m.

23. Regardless of how late the last patient of the day arrived, Ms. Lopez was required to stay at her desk. On many days, she was not allowed to take a break, or even eat, in violation of the N.Y. Lab. Law.

24. Defendants never paid her one and one-half (1.5) times her usual hourly rate for those hours she worked above forty (40) per workweek.

25. Defendants made payments to their employees twice monthly, nominally on the fourth business day after the 15th and last day of every month. However, collecting pay was often an issue and Defendant Zemlyakova would make excuses for Defendants' refusal to pay employees on time.

26. At all times relevant hereto, Ms. Lopez never had an actual lunch break; she would eat quickly and would be interrupted while eating if her assistance was needed, even after she became pregnant.

27. On many days, Ms. Lopez was simply unable to eat lunch due to her office responsibilities.

28. Meanwhile Defendant Zemlyakova came in late. Sometimes 11:00 a.m., but it was common for her to arrive after noon. Defendant Zemlyakova was so aggressive with her subordinates that the turnover rate was unusually and alarmingly high. Nobody could stand to work for her because she spoke to them like dogs.

29. Ms. Lopez however has thick skin; she is determined and persevering and, as described *infra*, this Complaint is not about petty slights, but rather contraventions of Ms. Lopez's rights including her right to be paid fairly and be accommodated reasonably for her pregnancy, to take breaks to eat during her long shifts.

## RACE DISCRIMINATION

30. In or about April 2013, Defendant Zemlyakova instituted a policy whereby employees were forbidden from speaking Spanish even in the break room, while taking breaks from work. This was despite the facts that (i) much of the clientele spoke Spanish; (ii) much of the clientele preferred to speak in Spanish to Ms. Lopez; and (iii) Defendant Zemlyakova spoke loudly in Russian at the office including in front of non-russophone clients.

31. Defendant Zemlyakova often enforced the policy by approaching only Hispanic employees in front of patients and demanding that they only speak in English.

32. Ms. Lopez was shocked and told Defendant Zemlyakova that her new policy was discriminatory and illegal. When Ms. Lopez was terminated by Defendant Zemlyakova, it was in part, retaliation for Ms. Lopez's attempt to assert her rights.

33. In July 2013, Defendant Zemlyakova began to schedule Ms. Lopez as the only receptionist in the front desk all day long, five days per week. Further, this made Ms. Lopez the only person responsible for a job that had always required two (2) people.

34. Ms. Lopez was now the sole employee responsible for welcoming, scheduling and processing patients; answering four (4) phone lines; pulling, examining and preparing patient charts for Defendant Zemlyakova and for the following work day; confirming patient appointments and rescheduling appointments; calling patients' insurance companies to verify

eligibility of coverage and claim status; cleaning and maintaining the front office area, including the waiting room amongst other tasks she was given throughout the day.

35. Defendant Zemlyakova held a meeting with Ms. Lopez and two (2) of the dental assistants to discuss Defendant American Dental's lunch-break policy.  Defendant Zemlyakova stated that employees were forbidden to take time to eat if there was not other employee to cover their position.

36. Ms. Lopez told Defendant Zemlyakova that she could not wait until 3:30 p.m. to have lunch on the days that Ms. Lopez's colleague was not in the office at an earlier time to cover the front desk.

37. Defendant Zemlyakova reiterated that employees could not take time to eat if their position was not covered.  Ms. Lopez often had to plead with Defendant Zemlyakova in order to eat during her daylong shifts.  Ms. Lopez thought this was outrageous behavior, but it was unconscionable after Ms. Lopez's pregnancy began.

## **GENDER DISCRIMINATION (PREGNANCY)**

38. In or around August 2013, Ms. Lopez became pregnant, which required regular doctor appointments.

39. Ms. Lopez always notified Defendant Zemlyakova as soon as she scheduled her prenatal appointments.

40. However, after Ms. Lopez's next prenatal care appointment, Defendant Zemlyakova told Ms. Lopez that "when you're <u>at the</u> doctor's office, you need to call me or this is not gonna work" and again threatened Ms. Lopez with her job.  (Emphasis added).

41. Defendant Zemlyakova told Ms. Lopez that she was not allowed to make new prenatal care appointments without scheduling them with Defendant Zemlyakova, but while Ms. Lopez was still at the doctor scheduling her follow up.

42. Ms. Lopez's pregnancy also required sonograms, which had to be done at a different medical center. Defendant Zemlyakova said she did not care and that "you need to find a doctor that will do the prenatal and the sonogram at the same time," even though Ms. Lopez's primary care physician had to refer her out for sonograms, which she explained to Defendant Zemlyakova.

43. Defendant Zemlyakova said "that [not being able to have prenatal appointments and sonograms performed at the same location] doesn't make sense to me" and "you need to figure it out" or else "you will be replaced."

44. On one of the occasions that Ms. Lopez was able to break for lunch, she was quietly chatting with her colleague in the back break room. Defendant Zemlyakova was in the hall and marched in and said "we have a policy, you can't speak in Spanish" here, even though most of the clientele is hispanophone, "do not speak Spanish or you will be replaced."

45. Ms. Lopez also had to ask Defendant Zemlyakova to cover her for taking lunch, when no one else was available to cover her.

46. Upon information and belief, Defendant Zemlyakova was always upset the few times she covered Ms. Lopez for lunch and "growled" at Ms. Lopez when she asked for coverage.

47. Other times Defendant Zemlyakova would lose her patience and tell Ms. Lopez "you have to wait—you can't eat." Often when Ms. Lopez would telephone to Defendant

Zemlyakova's office in the back in order to request coverage, Defendant Zemlyakova refused to answer the call.

48. When Defendant Zemlyakova did permit Plaintiff to break for lunch, she would tell her "if you're needed you will be interrupted," and "you're not going to get me to do your work."

49. While Ms. Lopez was usually provided no breaks whatsoever, Defendant Zemlyakova took frequent breaks, sometimes left for lunch, and would exit to smoke.

50. On Thursday, October 31, 2013, as a result of pregnancy complications, Ms. Lopez suffered from severe bleeding while she has at work. Ms. Lopez had to leave work to go to the hospital, and was assigned to bed rest for one (1) week.

51. On November 5, 2013, Ms. Lopez returned to work and requested reasonable accommodation for her pregnancy. She requested that an additional person be assigned to the front desk again so Ms. Lopez could eat during the day on the three (3) days per week when she was not joined by a colleague until 3:30 p.m.

52. Defendant Zemlyakova responded saying that "everything will stay the way it is. If you can't, I will find someone who can. I am really tired of constant confrontations with you. Work is work."

53. Ms. Lopez clarified that "I'm not trying to be confrontational with you at all." Ms. Lopez continued that:

> I always give 110% and I will continue to give 110% but the job is for two people not one u have left me in the front by myself since July and I've been doing my best. I'm pregnant more than ready n willing to work but not to do a two people job. I can't be over stressed . . . . That's too much. All I'm asking for is help for those 3 days that [Ms. Lopez's colleague doesn't come until 3:30 p.m.].

9

54. Ms. Lopez returned to work Wednesday, November 6, 2013. Even though Ms. Lopez was prescribed bed rest for a week, Ms. Lopez returned as soon as she was able.

55. The same day that Ms. Lopez returned to work, Mr. Polin stated that since Ms. Lopez started working at Defendant American Dental, there had been a lack of patients but "we haven't cut your hours." This was unthinkable as the doctors were booked weeks in advance and both of them knew it.

56. That evening, November 6, 2013, at 7:26:35 p.m., Ms. Polin emailed Ms. Lopez in response to Ms. Lopez's text messages with Defendant Zemlyakova. Ms. Polin stated that "[a]lthough I am sympathetic with your personal condition, . . . as a business we are <u>unable to accommodate your condition</u>. In order to stay in business, we need you to perform your job duties as before (if not better), and to follow Natalie's directions as your superior and office manager . . . ."

57. Ms. Lopez was further subjected to Defendant Zemlyakova's *animus* towards minorities during job interviewing. Defendant Zemlyakova made Ms. Lopez extremely uncomfortable by asking "do they sound black?" and "do they have a black last name?" Ms. Lopez told Defendant Zemlyakova that she "shouldn't be asking questions like that." Defendant Zemlyakova's only response was "Like what, I'm racist?"

58. Upon information and belief, Defendant Zemlyakova never returned calls to any black candidates except one.

## **TERMINATION**

59. On February 25, 2014, Ms. Lopez was illegally terminated for complaining about Defendants' racist policies and due to the reasonable requests related to her pregnancy. At the time of her termination, Ms. Lopez was due to give birth in approximately two (2) months.

60. Upon information and belief, Defendants terminated Ms. Lopez primarily because they refused to provide any accommodations related to her pregnancy, including an impending maternity leave.

**FIRST CLAIM**
**NYCHRL § 8-107(1)(a): Gender Discrimination by All Defendants**

61. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

62. It is illegal discriminatory conduct "[f]or an employer or an employee or agent thereof" "to discharge from employment . . . or to discriminate . . . in terms, conditions or privileges of employment" "because of the actual or perceived . . . race, . . . national origin, gender . . . or alienage . . . of any person." NYCHRL 8-107(1)(a).

63. All Defendants participated in such conduct: Plaintiff was treated worse and then fired: (i) if not for her actual gender and pregnancy; (ii) if not for her perceived race, perceived national origin and perceived alienage all of which is illegal in the workplace in New York City.

64. As a result, Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

**SECOND CLAIM**
**NYCHRL § 8-107(7) Retaliation by Defendant Zemlyakova**

65. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

66. Because Ms. Lopez complained about Defendant Zemlyakova's discriminatory conduct as set forth in ¶ 32, *supra*, it was illegal for Defendant Zemlyakova to "retaliate or

discriminate in any manner against" her. NYCHRL § 8-107(7). Defendant Zemlyakova subsequently fired Ms. Lopez in violation of this statute.

67. As a result, Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

## THIRD CLAIM
### 29 U.S.C. §§ 207(a)(1) and 215(a)(2): Unpaid Overtime Wages by All Defendants

68. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

69. By failing and refusing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants were in violation of 29 U.S.C. §§ 207(a)(1) and 215(a)(2) and it was willful within the meaning of 29 U.S.C. § 255(a).

70. Defendants' failure and refusal to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, attorneys' fees, costs, and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM
### N.Y. LAB. LAW §§ 190–199-A and §§ 650–65 Unpaid Overtime by All Defendants

71. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

72. Defendants willfully violated Plaintiff's rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for

hours worked in excess of forty (40) per week, in violation of the N.Y. LAB. LAW §§ 190–199-A, §§ 650–65, and regulations promulgated thereunder.

73. Defendants' failure and refusal to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, attorneys' fees, costs, and disbursements of the action pursuant to N.Y. LAB. LAW § 663.

### FIFTH CLAIM
### N.Y. LAB. LAW § 162 Withholding of Meal Periods by All Defendants

74. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

75. Ms. Lopez was an employee who worked "a shift of more than six hours which extends over the [11:00 a.m. to 2:00 p.m.] meal period is entitled to at least thirty minutes off within that period" for lunch. N.Y. LAB. LAW § 162.

76. All Defendants were in willful contravention of this statute when they prevented her from breaking for lunch even though she was eligible.

77. Ms. Lopez was not subject to the one-employee exception because she never consented to it. To the contrary, at all times relevant hereto, Plaintiff wanted a break for lunch when she was legally entitled to it.

78. The violation became wanton and unreasonably malicious after Plaintiff's pregnancy began.

79. As a result, Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(i) For the First Claim, actual damages to be determined at trial, but in no event less than one million dollars ($1,000,000);

(ii) For the Second Claim, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(iii) For the Third Claim, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(iv) For the Fourth Claim, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(v) For the Fifth Claim, actual damages to be determined at trial, but in no event less than five hundred thousand dollars ($500,000);

(vi) Punitive damages;

(vii) Liquidated damages;

(viii) Lost wages;

(ix) Lost employment benefits;

(x) Pre-judgment interest;

(xi) Post-judgment interest;

(xii) Attorneys' fees, disbursements, and other costs; and,

(xiii) Such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: New York, New York<br>May 14, 2014 | Respectfully submitted by:<br>THE HARMAN FIRM, PC |
| | <u>  s/   Walker G. Harman, Jr.  </u><br>Walker G. Harman, Jr. [WH-8044]<br>Ronnie L. Silverberg [RS-6881]<br>1776 Broadway, Suite 2030<br>New York, New York 10019<br>(212) 425-2600<br>wharman@theharmanfirm.com<br>rsilverberg@theharmanfirm.com |